```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

MICHAEL A. ROBERTS,                  :
                                     :
    Plaintiff,                       :
                                     :
vs.                                  :
                                     :   CIVIL ACTION 15-0461-M
CAROLYN W. COLVIN,                   :
Social Security Commissioner,        :
                                     :
    Defendant.                       :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 15). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 21). Oral argument was waived in this action (Doc. 20). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further actions not inconsistent with the Orders of the Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-nine years old, had completed a high school education (Tr. 186), and had previous work experience as a tree cutter and automobile mechanic (see Tr. 55). Plaintiff alleges disability due to bipolar disorder, mood disorder, personality disorder, and a history of alcohol abuse (Doc. 15 Fact Sheet).

The Plaintiff applied for disability benefits and SSI on September 26, 2012, alleging that he was disabled as of that date[1] (Tr. 13, 156-65). An Administrative Law Judge (ALJ) denied benefits, determining that although Roberts could not return to his previous work, there were specific jobs that he could perform (Tr. 13-23). Plaintiff requested review of the hearing

---

[1] Roberts originally alleged a disability onset date of December 31, 2008, but amended the date to September 26, 2012 at the hearing before the Administrative Law Judge (Tr. 13, 43).

decision (Tr. 8-9), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Roberts alleges that: (1) The ALJ did not weigh—or even acknowledge—the medical evidence provided by his treating Psychiatrist; (2) the ALJ did not properly develop the record; (3) the ALJ's determination of his residual functional capacity (hereinafter *RFC*) was incomplete; and (4) the ALJ's hypothetical questions to the Vocational Expert were incomplete (Doc. 15). Defendant has responded to—and denies—these claims (Doc. 16). The relevant evidence of record follows.[2]

On September 28, 2012, Roberts was seen at AltaPointe Health Systems, following a hospitalization, for a suicide attempt, at Mobile Infirmary Medical Complex that he left against medical advice (Tr. 244-49). Plaintiff was noted to have impaired memory and concentration and racing thoughts, but no anxiety; insight and judgment were fair. Roberts was diagnosed to have a mood disorder NOS, alcohol abuse, a borderline personality, cuts on his arm, and legal troubles; he was prescribed Risperdal,[3] trazodone,[4] and Vistaril.[5] Plaintiff

---

[2]Evidence that pre-dates Roberts's alleged onset date of September 26, 2012 by more than a year will not be included.

[3]*Risperdal* is used "for the management of the manifestations of psychotic disorders." *Physician's Desk Reference* 1310-13 (52nd ed. 1998).

[4]*Trazodone* is used for the treatment of depression. *Physician's*

3

was considered to be at elevated risk for continued self-harm.

On February 26, 2013, Dr. Harold R. Veits, Psychiatrist, reviewed the available record evidence at the request of the Social Security Administration and, without examining him, determined that Roberts suffered from personality disorders, affective disorders, and alcohol/substance addition disorders (Tr. 71-81, 305). Veits determined that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining functioning and in maintaining concentration, persistence, or pace, and had had one or two episodes of decompensation of extended duration. The Psychiatrist indicated that Roberts's statements concerning his impairments and symptoms were only partially credible. Veits indicated Plaintiff had understanding and memory limitations, was moderately limited in his ability to understand, remember, and carry out detailed instructions, and could maintain attention and concentration for only two-hour periods. Roberts was moderately limited in interacting appropriately with the general public and in accepting instructions and responding appropriately to criticism from supervisors; interactions with the public should be brief and casual while criticism should be provided in a non-confrontational, constructive manner. Roberts

---

*Desk Reference* 518 (52nd ed. 1998).
    [5]*Vistaril* is used to treat anxiety and tension and may be used to control nausea and vomiting. http://www.drugs.com/vistaril.html

was moderately limited in responding appropriately to changes in the work setting; changes should be infrequent and gradually introduced.

On October 11, 2012, an AltaPointe Therapist found Roberts sad, with a flat affect, and reporting sleeping difficulties; he denied using drugs in over two years, but was not taking his medications because someone stole them (Tr. 303-04). Plaintiff had suicidal thoughts; insight and judgment were poor. On November 2, Roberts reported depression, feelings of hopelessness, and wanting to die, though he denied a plan to hurt himself (Tr. 298). On November 9, the Case Manager noted that Plaintiff was not progressing as he was not keeping appointments or taking his medication as prescribed (Tr. 295). On December 6, the Therapist noted some progress as Plaintiff reported a reduction of psychotic symptoms and improved sleep and he was attending appointments; though sad, with no anxiety and fair insight and judgment, his memory was unimpaired and his thoughts were logical and coherent (Tr. 290-91). On that same date, a CRNP reported obsessive suicidal thoughts with no plan of execution, poor insight and judgment, and moderate anxiety (Tr. 288-89). Four days later, Roberts told his Case Manager that his medications were working and he had not had any anger outbursts (Tr. 287). On December 27, Plaintiff stated that he was taking his medications and was sleeping and feeling better

5

(Tr. 285). On January 9, 2013, Roberts reported that he was less depressed and was sleeping better; he had no suicidal thoughts or anxiety (Tr. 283-84). On January 29, the AltaPointe Pharmacist increased Plaintiff's Paxil[6] and Risperdal dosage as he had recently been irritable, angry, sleeping poorly, and had been in a fight; he voiced suicidal ideation (Tr. 279-80). On February 6, Roberts reported sleeping better and being less depressed with the medication changes; the Therapist noted fair insight and judgment with no anxiety (Tr. 276-77). On February 14, Plaintiff reported no anger outbursts and that he was exercising daily (Tr. 274). On March 20, he missed an appointment because he had blacked out and had a headache (Tr. 270). On March 26, Roberts reported less depression; the Therapist noted no self-injurious behavior, logical thoughts, unimpaired memory, fair insight and judgment, and no anxiety (Tr. 266-67). On the same date, the Doctor noted euthymic affect, suicidal thoughts with no plan, no impairment in concentration, poor insight and judgment, and mild anxiety (Tr. 264-65) while an RN found him to be irritable and sad with impaired memory and moderate anxiety (Tr. 262-63). On April 1, the Therapist stated that Roberts's Mother had reported that he was using alcohol and had not been taking his medications (Tr.

---

[6]P*axil* is used to treat depression. *Physician's Desk Reference* 2851-56 (52nd ed. 1998).

6

261); the Mother reported that he was doing better on April 25, 2013 (Tr. 259).

On May 2, Roberts reported that he had been rushed to the hospital because he was suicidal, suffering multiple panic attacks and depression daily and getting only two-to-three hours of sleep per night; his thoughts were logical, his concentration impaired, his insight fair, his judgment poor, and his anxiety severe (Tr. 424-25). The Altapointe Pharmacist substituted Remeron[7] and Latuda[8] for Trazodone, Risperdal, and Welbutrin;[9] he noted suicidal ideation, unimpaired memory, and moderate anxiety (Tr. 426-27). On May 7, Plaintiff reported that he was doing ok, but was still having suicidal thoughts, but no plan to act on them (Tr. 423). The next day, the Therapist reported that Roberts had called him and said that he wanted to kill himself; his Mother said family members were watching him (Tr. 421). On May 9, Roberts reported continuing suicidal thoughts as well as homicidal thoughts toward an uncle who had stole something from him; he was taking medications as directed (Tr. 419-20). An RN found his thoughts logical and coherent and his anxiety only mild. On May 10, Plaintiff, who was still suicidal with no

---

[7]*Remeron* is used to treat major depressive disorders. http://www.drugs.com/remeron.html

[8]*Latuda* is an antipsychotic medication used to treat schizophrenia and episodes of depression in people suffering from bipolar disorder.  http://www.drugs.com/latuda.html

[9]*Wellbutrin* is used for treatment of depression. *Physician's Desk Reference* 1120-21 (52nd ed. 1998).

7

plans, reported that his medications were not working; the Therapist noted no impairments in memory or concentration with logical thoughts and moderate anxiety (Tr. 416-17).  On May 13, 2013, Roberts reported that the medications made him feel better; he still experienced suicidal and homicidal thoughts but there were fewer of them (Tr. 412-15).  On May 16, Plaintiff reported that he was taking his medications, but that they were not working; he admitted to drinking, was irritable and agitated, with poor insight and judgment and no anxiety (Tr. 409-10).

On May 20, Plaintiff's Mother reported to AltaPointe that she had filed an involuntary commitment petition against her son as, two days earlier after drinking heavily, he had choked his father while holding two knives; the police had tased him before he was transported to Mobile Infirmary for two days (Tr. 390, 405-06).  Roberts was admitted to East Pointe Hospital for two weeks (Tr. 399, 403-05).[10]

On June 5, Plaintiff refused to discuss his recent behavior or treatment with his Therapist who noted "evident anger;" his diagnostic impression was as follows:  (1) Bipolar Disorder I, most recent episode depressed; substance induced mood disorder, ETOH abuse versus dependence; (2) Personality disorder NOS with

---

[10]The Court notes that the records from neither of the hospitalizations are in the record.

8

cluster B traits; and (3) dysfunctional interpersonal communication, multiple OPC statuses, limited/maladaptive coping skills, no income or medical coverage (Tr. 401). Roberts told the RN that he was depressed but less than previously, had no suicidal or homicidal ideation, and was taking his medications but was not sleeping soundly; she said he was mildly hostile with logical thoughts, unimpaired concentration, no anxiety, and fair insight and judgment (Tr. 399-400).

On June 13, 2013, the AltaPointe Therapist stated Roberts was still extremely guarded, though he was more positive than previously reported; Plaintiff was slightly irritable and flat, showing fair insight and judgment with no suicidal or homicidal thoughts and no anxiety (Tr. 393-94). That same date, Dr. Marianne Saitz reported that he was calm, cooperative, and pleasant with logical, coherent thoughts (Tr. 389-92). On June 18, the Therapist noted that Roberts was more positive, but asking to be switched back to his former Therapist (Tr. 381-82). On July 8, Plaintiff reported taking his medications; the Case Manager thought he was making progress (Tr. 375-76).

On July 11, AltaPointe Therapist Natashia McCarty stated Plaintiff was unpleasant, reporting that his family was not meeting his emotional needs; she found him to be making little progress as he had trouble controlling his temper and lacked insight into his continuing family conflict (Tr. 373-74).

Roberts had told his Case Manger earlier that day that he was going to kill himself within the next two weeks (Tr. 371).  On June 22, 2013, the AltaPointe Case Manager said that Roberts appeared to be taking his medications (Tr. 367).  On August 5, Plaintiff's Mother said that he was doing better with the medication change (Tr. 360).  On August 22, Plaintiff reported that he had not taken his medications in four days and wanted to punch everyone; he had gotten refills and reported that he could tell the difference when he took his medications and would continue to do so (Tr. 356).  That same date, Plaintiff reported to Therapist McCarty that he was involved with someone, but had been drinking one beer about every three days; she said that, although he lacked insight into his problems, his medication compliance marked progress (Tr. 354-55; *see also* Tr. 350).  Again on August 22, Roberts told his Doctor that he did not have suicidal or homicidal ideation but his thoughts raced; he had no medication side effects (Tr. 352-53).  The Doctor noted no impairment in concentration with good insight and judgment.  On September 12, Plaintiff's Mother reported that he had gotten married after knowing his girlfriend for three weeks and now felt that he was in over his head (Tr. 347-48).  On September 19, Roberts told McCarty that he was medication compliant and had moved in with his wife; he had no suicidal or homicidal thoughts, but had only fair insight and judgment (Tr. 345-46).

10

On September 27, Plaintiff's Mother reported apparent medication compliance and that he was doing better (Tr. 342).  On October 29, 2013, Roberts reported that he had gone to Mobile Infirmary, but refused to stay, because he wanted to kill himself as he and his wife had separated; he expressed homicidal ideation toward his wife's brother who had been ugly to him (Tr. 331-34).  Plaintiff was happy after talking with his wife (Tr. 333).  On November 4, the AltaPointe Case Manager reported that Roberts was taking his medications and reported that he was not drinking (Tr. 327).  On November 13, the Case Manger noted that Plaintiff had missed recent appointments with his Therapist and Doctor; Roberts reported taking his medications, but having trouble sleeping (Tr. 324).  A week later, family-related issues caused Plaintiff significant distress, leading him to spend one night in the hospital because he wanted to kill himself (Tr. 320, 323).  On November 25, Roberts reported that he was not drinking and his wife was pregnant; medications were causing no side effects (Tr. 319).  Plaintiff was not drinking because no one had money to buy it (Tr. 319).

On December 3, Doctor Saitz reported that Roberts was depressed because his mother-in-law was not letting him speak to his pregnant wife; Remeron was discontinued in favor of Prozac[11]

---

[11]*Prozac* is used for the treatment of depression.  *Physician's Desk Reference* 859-60 (52nd ed. 1998).

11

and Zyprexa[12] (Tr. 315-16). Plaintiff was sad and flat, verbal when prompted, and suicidal with poor insight, fair judgment, and impaired concentration. On December 6, 2013, Plaintiff's Mother reported that he was taking his medications and was not drinking (Tr. 314).

On December 17, Therapist McCarty completed an RFC evaluation in which she indicated that Roberts had moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, marked deficiencies of concentration persistence, or pace, and had experienced four or more episodes of deterioration, causing him to withdraw from the situation or experience exacerbation of signs and symptoms (Tr. 306-07). McCarty further found that Plaintiff had limitations in his ability to do the following: understand, carry out, and remember instructions; respond appropriately to supervision; perform simple or repetitive tasks; he would be extremely limited in responding appropriately to co-workers. The Therapist indicated that these limitations had lasted at this level since February 19, 2007; she reported that he experienced medication side effects including poor memory, lethargy, poor concentration, tremors, and poor appetite.

On December 31, 2013 AltaPointe records show Roberts's

---

[12]*Zyprexa* is used for the "management of the manifestations of psychotic disorders." *Physician's Desk Reference* 1512 (52nd ed. 1998).

12

denial of substance abuse; he was not experiencing suicidal or homicidal thoughts, showed poor insight and judgment, and had only mild anxiety (Tr. 431-33).

This concludes the Court's summary of the medical evidence.

In bringing this action, Roberts has raised four claims. The first is that the ALJ did not weigh—or even acknowledge—the medical evidence provided by treating Psychiatrist, Dr. Marianne Saitz (Doc. 15, pp. 9-12).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*,

660 F.2d 1078, 1084 (5th Cir. 1981);[13] *see also* 20 C.F.R. § 404.1527 (2015).  The Court further notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Furthermore, social security regulations provide the following instruction:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements).

The Court notes that although the ALJ, in her decision, regularly cited to Exhibit 9F, the exhibit wherein the Psychiatrist's recorded notes are found, Roberts is correct in

---

[13]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

14

stating that the ALJ did not weigh—or even acknowledge—the evidence specifically provided by Dr. Saitz.  The Court has summarized that evidence already, but will, for purposes of this claim, now reiterate the Psychiatrist's record contributions.

On June 13, 2013, Dr. Saitz reported that Plaintiff was calm, cooperative, and pleasant with logical, coherent thoughts; his concentration was unimpaired and he had no suicidal or homicidal thoughts (Tr. 389-92).  On December 3, 2013, Saitz reported that Roberts was depressed because of issues with his new wife's family, so she changed his medications; he was sad, flat, and suicidal with poor insight, fair judgment, and impaired concentration (Tr. 315-16).  After both of these examinations, the Doctor indicated that Roberts should see a doctor again in one month or, if necessary, sooner (Tr. 315, 391).  The Court notes that during the intervening six months during which Roberts was not seen by Dr. Saitz, he was examined by one other Doctor, once on August 22, 2013, who provided no evidence that Plaintiff was experiencing any difficulty as shown by his findings that Roberts had no suicidal or homicidal thoughts, no impairment in concentration, an unimpaired memory, good insight and judgment, and no anxiety (*see* Tr. 352-53).

The Court first finds that Dr. Saitz's records do not set out, as discussed in *Winschel* and the regulations discussed above, her judgment of Roberts's prognosis, abilities in spite

15

of his impairments, or restrictions; therefore, there was nothing in her conclusions for the ALJ to accept or reject. As such, the Court concludes that the ALJ's failure to recognize and weigh that evidence amounts to, at most, no more than harmless error. Roberts's claim otherwise is without merit.

Plaintiff next claims that the ALJ did not properly develop the record. More specifically, the ALJ failed to order a consultative examination to fill in evidentiary gaps in the record (Doc. 15, pp. 3-12).

The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Court notes that Plaintiff's argument relies on two premises: (1) The ALJ improperly relied on the conclusions of non-examining Psychiatrist Veits whose opinions were based on a small fraction of the record evidence; and (2) the ALJ did not properly consider the evidence provided by treating Psychiatrist Saitz. The Court has rejected the second of these premises,

16

leaving only the merits of the first to be discussed.

The record shows that the only medical evidence considered by Non-Examiner Psychiatrist Veits relevant to Roberts's onset date of September 26, 2012 was the initial report from AltaPointe, created two days after the onset date (*see* Tr. 72-74; *cf.* Tr. 244-49). The balance of the evidence spans fifteen months to December 31, 2013.

In her decision, the ALJ found that Plaintiff's testimony regarding his impairments and limitations was not credible (Tr. 18-20). Roberts does not challenge this finding. In weighing the medical evidence, the ALJ gave little weight to the conclusions of AltaPointe Therapist McCarty (Tr. 20-21). Again, Plaintiff does not challenge this finding.

The ALJ gave significant weight to the opinion of Dr. Veits and relied on it in fashioning her conclusions regarding Roberts's RFC (Tr. 21); it was the only evidence given any evidentiary weight. In her determination, however, the ALJ went on to say that "the residual functional capacity finding differs somewhat from Dr. Veits' opinion" (Tr. 21).

The Court notes, first, that it is troubled that the ALJ gave significant weight to a Non-Examining Physician's opinion

17

that considered such a small portion of the evidence.[14]  This concern is compounded by the ALJ's frank admission that the RFC determination "differs somewhat" from the very evidence on which it is based.  The Court cannot say that the ALJ has properly developed the record in this action.  The Court finds that the ALJ's determination is not supported by substantial evidence: Plaintiff's claim that the ALJ did not properly develop the record in this action has merit.[15]

Therefore, it is **ORDERED** that this action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, the gathering of additional evidence of Plaintiff's ability to work.  Judgment will be entered by separate Order.

DONE this 10th day of March, 2016.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE

---

[14] In addition to the fact that Veits considered only two days of evidence spanning a fifteen-month period, it was comprised of only two out of nearly two hundred pages of evidence.

[15] Because it has reached this decision, the Court finds it unnecessary to address Roberts's other two claims.